**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES A. SANDERS,

       Petitioner,

v.                                                   Case Number: 07-CV-11066
                                                           Honorable Stephen J. Murphy, III

BLAINE LAFLER,

       Respondent,

_____/

**OPINION AND ORDER CONDITIONALLY GRANTING
<u>PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS</u>**

Petitioner James A. Sanders, a state inmate currently incarcerated at the Carson City Correctional Facility in Carson City, Michigan,[1] filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. In his *pro se* petition, Petitioner challenges his *nolo contendere* convictions for (1) assault with intent to murder, in violation of MICH. COMP. LAWS § 750.83, (2) possession of a firearm, in violation of MICH. COMP. LAWS § 750.224F, (3) carrying a concealed weapon, in violation of MICH. COMP. LAWS § 750.227, (4) two counts of felony firearm, in violation of MICH. COMP. LAWS § 750.227BA, (5) possession with intent to deliver less than 50 grams of cocaine, in violation of MICH. COMP. LAWS § 333.74012A4, and (6) resisting and obstructing a police officer, in violation of MICH. COMP. LAWS § 750.81D1. In his pleadings, Petitioner alleges that (1) he was denied the effective assistance of counsel during his sentencing hearing and, (2) he was denied his right to the appointment of appellate counsel, pursuant to *Halbert v. Michigan*, 545 U.S. 605 (2005). For the reasons

---

[1] Petitioner was incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, when he originally filed his petition.

set forth below, the petition for writ of habeas corpus is **CONDITIONALLY GRANTED** regarding Petitioner's second claim– that he was denied his right to the appointment of appellate counsel pursuant to *Halbert*.

I.

On April 20, 2004, Petitioner pleaded *nolo contendere* to the above-stated charges in the Muskegon County, Michigan, Circuit Court, the Honorable Timothy G. Hicks, presiding. There was a *Cobbs*[2] agreement in place at the time of the plea, where the trial judge agreed that the maximum-minimum sentence would not exceed fourteen years and three months imprisonment and that the assault charge and the drug charge would run concurrently. Plea Hr'g Tr. pp. 4-26, Apr. 20, 2004.

However, prior to Petitioner's plea hearing, his attorney filed a motion to withdraw, citing a breakdown in the attorney-client relationship. The hearing on that motion was held on January 12, 2004. At that time, the following exchange took place between the trial judge and Petitioner:

> THE COURT: Well, the things I'm most– You're right, Mr. Swanson. The things, Mr. Sanders, I really most need to know about is what things do you think Mr. Swanson is or is not doing? Like what activities is he not doing or is he doing that you think contributed to this breakdown of the relationship. Okay. Let me ask you this. Do you think your relationship has broken down with him?
> THE DEFENDANT: Yeah.
> THE COURT: Okay. He says you're not talking to him anymore about it. Are you talking to him about the case?
> THE DEFENDANT: I communicate with him.
> THE COURT: You communicate with him.
> THE DEFENDANT: Everything I say to him, he really just brush me off.
> THE COURT: Okay.

---

[2] *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993).

>THE DEFENDANT: And he constantly telling me how stupid I am not to take the [*Cobbs*] hearing. He telling me how stupid other people feel I am that he discuss and he talking about people from streets that supposedly know me.
>
>* * *
>
>THE COURT: Does he use the word stupid when he talks to you?
>THE DEFENDANT: Exactly. Exact word he used to me.
>
>* * *
>
>THE DEFENDANT: And then he's constantly telling me well you're not going to win. You know– I mean what confidence do you have in a case that you're going to represent me if you feel I ain't gonna win? How you going to represent me to your full extent?
>THE COURT: All right. Have you given him names of witnesses that you want him to locate?
>THE DEFENDANT: Yes.
>THE COURT: Has he located those folks, or has he tried to?
>THE DEFENDANT: He says he can't find them.
>
>* * *
>
>THE DEFENDANT: Just the one. Not the one I gave him though. That's why I'm saying our communication has broken down totally.

Motion Hr'g, pp. 7-10, Jan. 12, 2004. The trial judge denied Petitioner's motion.

On April 20, 2004, the following colloquy took place at the plea hearing:

>THE COURT: * * * Are you prepared at this time to plead to the charge?
>THE DEFENDANT: Yes.
>THE COURT: We'll take them one at a time. Let's start with the drug case. Count one, possession with intent to deliver less than 50 grams of a mixture containing cocaine on or about June 19, 2003?
>THE DEFENDANT: No contest.
>THE COURT: Assaulting, resisting, or obstructing the police officer at the same time and place?
>THE DEFENDANT: No contest.
>
>* * *

-3-

THE COURT: On the assault file, 495, what's your plea to the charge of assault with intent to murder relating to Ms. Sones Montgomery?

THE DEFENDANT: No contest.

THE COURT: Your plea to being a felon in possession of a firearm when you still disqualified from doing so?

THE DEFENDANT: No contest.

* * *

THE COURT: Count three, carrying a concealed weapon?

THE DEFENDANT: No contest.

THE COURT: Count four, felony firearm attaching to the felon in possession of firearm charge?

THE DEFENDANT : No contest.

THE COURT: And count five, felony firearm attaching to the assault with intent to murder charge?

THE DEFENDANT: No contest.

THE COURT: Mr. Sanders, has anybody promised you anything else beyond the matters that we have described here today to get you to plead no contest?

THE DEFENDANT: No.

* * *

THE COURT: Okay. Mr. Sanders, has anybody threatened you to get you to plead no contest here today?

THE DEFENDANT: No.

THE COURT: Is it your own free choice to plead no contest to the charge? - -

THE DEFENDANT: Yes.

* * *

THE COURT: All right. Mr. Sanders, if the Court accepts the pleas here today, you will not have a trial of any kind on these charges, and you give up certain rights that you have at trial. The rights that you're giving up include this list: The right to a trial by jury; the right to a trial by the Court without a jury if you choose and the prosecutor and the Court agree to do this; you're giving up the right to be presumed innocent until proven guilty; to have the prosecutor prove beyond a reasonable doubt that you are guilty; to have the witnesses against you appear at trial; to question the witnesses against you; to have the Court order any witnesses you have for your defense to appear at the trial, to remain silent during the trial, to not have your silence used against you, and to testify at the trial if you want to testify. Do you understand that by pleading no contest, you are giving up all these rights?

THE DEFENDANT: Yes.

-4-

> THE COURT : The reasons for the no contest plea, Mr. Swanson?
> MR. SWANSON [Petitioner's attorney]: Avoidance of civil liability, your Honor.
>
> THE COURT: Very well. Mr. Sanders, do you understand that if the Court accepts the pleas here today, you're giving up any claim that these pleas were the results of secret promises or threats that were not disclosed here today?
> THE DEFENDANT: Yes.
> THE COURT: You're also giving up the right to claim later that it was not your own choice to enter these pleas here today. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Finally, by pleading no contest, you change your appeal rights from having the right to appeal to the Court of Appeals to having to ask for leave or for permission to appeal to the Court of Appeals. Do you understand the difference?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. pp. 19-25, Apr. 20, 2004. The trial court accepted Petitioner's plea "to be knowing, voluntary, understanding, and accurate." Plea Hr'g Tr. p. 25, Apr. 20, 2004.

Following the plea hearing, subsequently, on May 21, 2004, the trial judge sentenced Petitioner as a habitual offender–second to (1) fourteen years and three months to thirty-five years imprisonment for the assault with intent to murder conviction, (2) eighteen months to seven and one-half years imprisonment for the possession of a firearm conviction, (3) two years imprisonment for the felony firearm conviction, (4) two to thirty years imprisonment for the possession with intent to deliver conviction and, (5) one to three years imprisonment for the resisting and obstructing conviction.

On November 29, 2004, Petitioner filed a motion to withdraw his plea on the basis that his attorney failed to object to the scoring of the guidelines during his plea hearing. It was Petitioner's position that if his attorney had objected, then he would have been entitled to a lesser sentence. The trial court denied Petitioner's motion. *People v. Sanders*, Nos.

0349495-FC and 0349062-FH (Muskegon County Circuit Court, Jan. 28, 2005).

On April 4, 2005, Petitioner then filed a *pro per* delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claim:

> I.  [Petitioner] was denied effective assistance of counsel during the sentencing hearing, where counsel failed to object to the scoring of any of the offense variables in regards to the *Cobbs* agreement plea.

Along with his *pro per* delayed application, Petitioner submitted an affidavit of indigency and, in the relief that he was requesting, on page fourteen of his brief, Petitioner asked for appointed counsel.

On September 29, 2005, the Michigan Court of Appeals denied Petitioner's application, "for lack of merit in the grounds presented." *People v. Sanders*, No. 261993 (Mich. Ct. App. Sept. 29, 2005). The Court of Appeals failed to address Petitioner's request for counsel and issued its order without the People filing a response to the delayed application.

Following, Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court, raising the same claim as raised in the Court of Appeals and again requesting that counsel be appointed. On September 27, 2006, the Michigan Supreme Court denied Petitioner's application. However, in reviewing Petitioner's application, Justice Kelly noted the *Halbert* issue and therefore made a statement indicating that she would remand Petitioner's case in light of the *Halbert* decision. *People v. Sanders*, 477 Mich. 873, 721 N.W.2d 578 (2006) (Kelly, J., "would remand to the Court of Appeals for reconsideration in light of *Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005)."). Petitioner subsequently filed a motion for reconsideration of that decision,

which was also denied. *People v. Sanders*, 477 Mich. 1008, 726 N.W.2d 15 (2007) (Kelly, J., "would grant reconsideration and, on reconsideration, would remand this case to the circuit court for a determination of indigency and appointment of appellate counsel, in light of *Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005).").

Petitioner neither filed a petition for a writ of certiorari in the United States Supreme Court nor a motion for relief from judgment pursuant to M.C.R. 6.500 in the state trial court.

Petitioner now seeks the issuance of a writ of habeas corpus, raising the following claims:

> I. [Petitioner] was denied effective assistance of counsel during the sentencing hearing where counsel failed to object to the scoring of any of the offense variables in regards to the [*Cobbs*] agreement plea.
>
> II. [Petitioner] was denied his Sixth Amendment right to the appointment of appellate counsel and a direct application of the new rule announced in [*Halbert v. Michigan*], 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005) in violation of his basic requirements of due process and equal protection.

II.

Habeas petitions, filed after April 24, 1996, are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (April 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Petitioner filed his petition on March 13, 2007, and, therefore, the AEDPA applies to Petitioner's case. The AEDPA states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d). Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.*, at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as

determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established federal law as determined by the Supreme Court" is the benchmark for habeas review of a state-court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Dickens v. Jones*, 203 F.Supp. 354, 359 (E.D. Mich. 2002).

A.

Regarding Petitioner's failure to appoint appellate counsel claim, Respondent does not argue that the claim is unexhausted. Rather, Respondent argues that Petitioner is not entitled to relief because he failed to request counsel at the trial court level. The Court disagrees with Respondent's contention and will briefly address the exhaustion issue.

Ordinarily, state prisoners must first exhaust their available state-court remedies before seeking habeas relief by fairly presenting all their claims to the state courts. 28

U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).  A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in both the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *Welch v. Burke*, 49 F.Supp.2d 992, 998 (E.D. Mich. 1999).  The burden is on the petitioner to prove exhaustion.  *Rust v. Zent*, 17 F.3d 155, 160 (1994).  Exhaustion requires that a petitioner provide the state courts with the opportunity to correct any constitutional violations by invoking "one full round" of the state's appellate-review process. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). Federal habeas law provides that a habeas petitioner is only entitled to relief if he or she can show that the state-court adjudication of his or her claims resulted in a decision that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d).  Unless an exception applies, a petition must be dismissed for lack of exhaustion if it contains at least one issue which was not presented to the state courts, so long as a remedy is still available for the petitioner to pursue in the state courts.  *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) (the AEDPA maintains the *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982) requirement that a mixed petition must be dismissed).

However, exhaustion may also be excused pursuant to 28 U.S.C. § 2254(b)(1)(B)(ii) if "circumstances exist that render such process ineffective to protect the rights of the applicant." Relying on this clause, the Sixth Circuit ruled that inordinate delay in adjudicating state-court claims raised by the habeas petitioner can be such a circumstance and serve to excuse the petitioner's failure to exhaust.  *See Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992) (holding that when state procedures become ineffective or inadequate, the foundation of the exhaustion requirement is undercut and the federal courts

may take action) (citing *Shelton v. Heard*, 696 F.2d 1127, 1128 (5th Cir.1983).).

In this case, Petitioner filed a *pro per* delayed application for leave to appeal in the Michigan Court of Appeals, requesting that an attorney be appointed to assist him; "Appoint counsel to represent the Defendant." Petitioner's Brief to the Michigan Court of Appeals, p. 14, dated April 4, 2005. However, the Court of Appeals ignored Petitioner's request and denied the delayed application "for lack of merit in the grounds presented." *Sanders*, No. 261993 (Mich. Ct. App. Sept. 29, 2005). Subsequently, Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court, making the same request. The Michigan Supreme Court ultimately denied Petitioner's application but Justice Kelly, in a statement, stated that she would remand to the Court of Appeals for reconsideration in light of *Halbert*. *Sanders*, 477 Mich. 873, 721 N.W.2d 578. In Petitioner's motion for reconsideration, although again denied by the Michigan Supreme Court, Justice Kelly again stated that she would remand in light of *Halbert*. *Sanders*, 477 Mich. 1008, 726 N.W.2d 15. Against that backdrop, the Court finds this claim is exhausted, as it was considered, though ignored, by the state-appellate courts.

Moreover, even if the Court were to find that this claim was unexhausted, the Court would invoke 28 U.S.C. § 2254(b)(1), which would allow it to address the merits of Petitioner's claim:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or

>(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Based on the facts presented, it would be the Court's position that there are no available State corrective processes for the Petitioner to invoke, 28 U.S.C. § 2254(b)(1)(B)(i), and, even if there were processes available, circumstances exist to render those processes ineffective. 28 U.S.C. § 2254(b)(1)(B)(ii). Thus, even if the Court found that Petitioner's claim was not exhausted, it would nevertheless proceed to address the merits of his claim, *i.e.*, that he was denied appellate counsel for his first-tier of appellate review, on the basis of 28 U.S.C. § 2254(b)(1).

B.

A defendant has a right to be represented by counsel on his first appeal from conviction. *Douglas v. California*, 372 U.S. 353, 356 (1963). This absolute right to be represented by effective assistance of counsel applies to direct appeals of right, *Evitts v. Lucey*, 469 U.S. 387, 395-97 (1985), as well as first-tier discretionary appeals, *Halbert*, 545 U.S. at 610. The question here is whether Petitioner's judgment of conviction was final when *Halbert* was decided. If so, Petitioner is not entitled to *Halbert's* protections. See *Simmons v. Kapture*, 516 F.3d 450, 451 (holding that *Halbert* does not apply retroactively to cases proceeding on collateral habeas review). If, on the other hand, Petitioner's judgment of conviction was not final when *Halbert* was handed down, then he was entitled to appellate counsel and habeas relief is warranted. *See, e.g., Griffith v. Kentucky*, 479 U.S. 314, 322, 328 (1987) (noting that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication" and holding that "a new rule for the conduct of criminal prosecutions is to be

applied retroactively to all cases, state or federal, pending on direct review or not yet final").

In 1994, Michigan voters approved a proposal which amended Michigan's State Constitution to provide that "an appeal by an accused who pleads guilty or *nolo contendere* shall be by leave of the court," rather than by right. Mich. Const., Art. 1, § 20. In the aftermath of this amendment, some trial court judges in Michigan began to deny appointed appellate counsel to indigent defendants who had pleaded guilty or *nolo contendere.* MICH. COMP. LAWS § 770.3a. *See Kowalski v. Tesmer*, 543 U.S. 125, 127 (2004). At that time, a majority of the Michigan Supreme Court upheld the constitutionality of this practice against challenges based on the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Federal Constitution. *People v. Harris*, 470 Mich. 882, 681 N.W.2d 653 (2004) (Kelly, J. dissenting, and Cavanagh, J., would hold case in abeyance pending the decision in *Kowalski v. Tesmer*, [543 U.S. 125 (2004)].).

Then, in 2005, the United States Supreme Court in *Halbert*, *supra*, basing its holding on *Douglas*, 372 U.S. at 356, held that the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution require the appointment of counsel for defendants who have pleaded guilty or *nolo contendere* and who seek access to first-tier review of their convictions in the Michigan Court of Appeals. *Halbert*, 545 U.S. at 610. In applying the rationale of *Douglas* to require the appointment of appellate counsel in plea-based convictions, the Supreme Court was guided by two considerations. First, the Supreme Court found that in determining how to dispose of an application for leave to appeal, the Michigan Court of Appeals looked to the merits of the claims made in the application. *Halbert*, 545 U.S at 617. Second, "[i]ndigent defendants pursuing first-tier review in the [Michigan] Court of Appeals are generally ill equipped to represent

themselves." *Id.* Of "critical importance" to its decision, the Supreme Court found that the Michigan Court of Appeals, unlike the Michigan Supreme Court, sits as an "error-correction" court, and thereby rejected the State of Michigan's argument that review of a plea-based conviction in the Michigan Court of Appeals was a form of "discretionary review" for which the appointment of appellate counsel was not required, pursuant to the holding in *Ross v. Moffitt*, 417 U.S. 600 (1974). *Halbert*, 545 U.S at 617-618.

Thus, "[w]hether formally categorized as the decision of an appeal or the disposal of a leave application, the [Michigan] Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive." *Halbert*, *Id.*, at 619. A "first-tier review" applicant like Petitioner in this case, who is forced to represent himself on appeal, will, unlike a defendant who is represented on appeal by counsel, "[f]ace a record unreviewed by appellate counsel, and will be equipped with no attorney's brief prepared for, or reasoned opinion by, a court of review." *Id.* "[N]avigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals, like [Petitioner], who [may] have little education, learning disabilities, and mental impairments" and Michigan's procedures for seeking leave to appeal after sentencing on a guilty or *nolo contendere* plea "may intimidate the uncounseled." *Id.*, at 621.

C.

Applying the holding in *Halbert* to the case at hand, the Court finds that the final judgment in Petitioner's case did not occur prior to the *Halbert* decision and thus, *Halbert* is the controlling law. The procedural facts in this case are as follows: On January 5, 2004, Petitioner filed a motion to remove his attorney from the case, on the grounds that there

was a breakdown in the professional relationship. The trial court denied the motion on January 12, 2004. On April 20, 2004, Petitioner then pleaded *nolo contendere* to the charges and subsequently was sentenced on May 21, 2004. At the sentencing hearing, the trial court informed Petitioner that he was entitled to an attorney for his discretionary appeal and gave him the necessary papers. Sentencing Hr'g, p. 12, May 21, 2004.

Following sentencing, Petitioner filed a *pro per* motion to withdraw his plea, which was denied on January 28, 2005. *Sanders*, Nos. 03-49495-FC & 03-49062-FH (Muskegon County Circuit Court, Jan. 28, 2005). It appears from the documents submitted that an attempt to order transcripts was subsequently made on March 7, 2005. Petitioner filed a *pro per* delayed application for leave to appeal on April 4, 2005, and requested appellate counsel at that time. A letter from the Court of Appeals, dated August 22, 2005, indicates that Petitioner did in fact file a delayed application for leave to appeal. That was within twelve months of his sentencing date; accordingly, Petitioner's delayed application constituted a direct appeal under Michigan law.[3] That application was denied by the

---

[3]Michigan Court Rule 7.205 governs the timing of an application for leave to appeal. The rule states that such an application "must be filed within 21 days after entry of the judgment or order to be appealed from." M.C.R. 7.205(A). The rule also provides for a late appeal, which must be filed within 12 months from "entry of the order or judgment to be appealed from." *Id.*, at (F)(3)(b). Michigan courts consistently have treated a late application for leave to appeal as part of the direct appeal process. *See, e.g., People v. Dekubber*, 480 Mich. 1051, 743 N.W.2d 893, 894 (2008) (holding that the defendant "was deprived of his direct appeal" when his counsel failed to file a brief within the deadline set forth in MCR 7.205(F), which governs late application for leave to file an appeal) (emphasis added); *People v. Clement*, 254 Mich.App. 387, 393, 657 N.W.2d 172, 176 (2002) (holding that "where an appeal to the Court of Appeals is delayed by more than twelve months after judgment, appeal is foreclosed and defendant is limited to the post-appeal relief provisions under MCR 6.501 *et. seq.* MCR 7.205(F)(3). In essence, a long delayed direct appeal is treated as collateral.").

Michigan Court of Appeals on September 29, 2005.

Respondent argues that Petitioner should not be entitled to relief under *Halbert* because he failed to request an attorney. Although Petitioner did not request appellate counsel in the trial court, he did in fact request appellate counsel when he filed his *pro per* delayed application for leave to appeal with the Michigan Court of Appeals and the Michigan Supreme Court. Following the denial of his application in both state appellate courts, Petitioner did not seek certiorari from the United States Supreme Court.[4] The Michigan Supreme Court denied the application on September 27, 2006.

*Halbert* was decided on June 23, 2005, more than three months before Petitioner's application to the Michigan Court of Appeals was denied and more than a year before Petitioner's application to the Michigan Supreme Court was denied. Thus, Petitioner's judgment of conviction was not final when *Halbert* was handed down. Respondent concedes that "Petitioner's judgment of conviction was not final when *Halbert* was handed down." Respondent's Brief, p. 2. This Court therefore concludes that, based upon the United States Supreme Court's holding in *Halbert*, Petitioner was deprived of his right to the assistance of appellate counsel.

Accordingly, because Petitioner's case on direct review was not yet final when *Halbert* was decided, he was entitled to the protection of that case's holding; Petitioner was denied counsel for his first-tier of appellate review. The Court therefore finds that the state

---

[4]"A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied. *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).

appellate courts' decisions were "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  Petitioner is therefore entitled to habeas relief.

D.

The Court now must determine the proper remedy.  The Court has "broad discretion in conditioning a judgment granting habeas corpus relief," and may dispose of habeas cases "as law and justice require."  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quotation omitted).  Further, the Supreme Court has affirmed the issuance of a conditional writ of habeas corpus that required a state court to grant the petitioner a new appeal of right where the petitioner received ineffective assistance of appellate counsel on direct review.  *Evitts v. Lucey*, 469 U.S. 387, 403 (1984). *See also Keyes v. Renico*, No. 05-71160, 2005 WL 2173212, 4 (E.D. Mich. Sept. 2, 2005) (Tarnow, J.) (holding that the appropriate remedy for a petitioner who was improperly denied counsel on first appeal was to issue a writ "conditioned upon the State of Michigan appointing counsel for the petitioner to prepare an application for leave to appeal and accepting said appeal for filing thereafter"); *Benoit v. Bock*, 237 F. Supp. 2d 804, 812 (E.D. Mich. 2003)(Lawson, J.) (conditionally granting writ based on ineffective assistance of appellate counsel and ordering that writ will be granted unless the "Michigan Court of Appeals reinstates the petitioner's appeal of right and appoints counsel").  In this instance, the Court will follow a similar path and issue a conditional writ requiring counsel to be appointed and requiring appointed counsel to file an application for leave to appeal with the Michigan Court of Appeals.

E.

The Court, by granting Petitioner a new appeal under the *Halbert* claim, has

essentially "unexhausted" Petitioner's non-*Halbert* claim. *See Walker v. McCaughtry*, 72 F. Supp. 2d 1025, 1037 (E.D. Wis. 1999). This Court declines "to collaterally estop" Petitioner from raising these issues, or any additional claims, on his reinstated appeal and prefers to allow the recommencement of Petitioner's direct appeal in the Michigan appellate courts "[t]o completely wipe clean the slate" and to allow these state courts, rather than this Court, the initial opportunity to decide these issues. *Id.*

III.

Accordingly, the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**. Within ninety (90) days from the date of this order, the State of Michigan shall appoint counsel for Petitioner. Appointed counsel shall file an application for leave to appeal in the Michigan Court of Appeals. If counsel is not appointed or if the Michigan Court of Appeals does not accept the application for filing, Petitioner should advise this Court, and the Court will provide further relief as law and justice requires.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 7, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 7, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager

-18-